918 F.2d 1121
 59 USLW 2346, 18 Fed.R.Serv.3d 344
 Constance A. NEWTON, as Executrix of the Estate of Hubert
Wells, deceased; and Betty Wells; individually and as
widow of Hubert Wells; Kenneth T. Marvel and Virginia
Marvel, his wife; Ralph R. Cordrey and Verna Cordrey, his
wife; Lawrence B. Rowan and Nancy Rowan, his wife,
v.
A.C. & S., INC., a/k/a Acands, Inc., formerly known as
Armstrong Contracting and Supply Corp.; Amchem Products,
Inc.; Armstrong World Industries, formerly known as
Armstrong Cork Company; Asbestos Corporation, Ltd.; Atlas
Turner Ltd., formerly known as Atlas Asbestos Company, a
division of Bell Asbestos Mines, Ltd.; Bell Asbestos Mines,
Ltd.; Bird & Sons, Inc.; Carey Canadian Mines, Ltd.;
Celotex Corporation, individually and as
successor-in-interest to the Philip Carey Manufacturing
Company, Philip Carey Corporation, Briggs Manufacturing and
Panacon Corporation; Charles A. Wagner Company, Inc.;
Delaware Insulation Company; Eagle-Picher Industries, Inc.;
Fibreboard Corporation; GAF Corporation, individually and
as successor-in-interest to Ruberoid Corporation and Vermont
Asbestos Mines; Garlock, Inc.; H.K. Porter Company, Inc.,
individually and as successor-in-interest to Southern
Textile Corporation, formerly known as Southern Asbestos
Company; Jim Walter Corporation; John Crane-Houdaille;
Keene Corporation, individually and as successor-in-interest
to Keene Building Products and Baldwin, Ehret and Hill,
Inc.; Metropolitan Life Insurance Company; Nicolet, Inc.,
individually and as successor-in-interest Keasbey & Mattison
Co.; Nosroc, Inc., formerly known as G. & W.H. Corson,
Inc.; Owens-Corning Fiberglas Corporation; Owens-Illinois,
Inc.; Pittsburgh Corning Corporation; Raymark Industries,
Inc., individually and as successor-in-interest to and/or
formerly known as Raybestos-Manhattan, Inc.; Spray Craft
Corporation, individually and formerly known as Asbestospray
Corporation; Turner and Newall, PLC, individually and as
responsible entity for the actions and products of its
former subsidiaries, J.W. Roberts, Ltd., Turner Brothers
Asbestos Industrial Products, Ltd., Turner Asbestos Fibres
and also responsible for the actions and products of its
North American subsidiaries, Keasbey and Mattison, Bell
Asbestos Mines, Ltd. (including its wholly-owned subsidiary
Atlas Asbestos Company) and Atlas Turner, Ltd.
Appeal of MANVILLE CORPORATION ASBESTOS DISEASE COMPENSATION
FUND (Two Cases).
Grace DOUGHERTY, individually and as administratrix of the
Estate of Harry Dougherty; Howard J. Cox, Jr., and Patricia
A. Cox, his wife; Rudolph Kollar and Jeanne Kollar, his
wife; Myron M. Cornett and Gale F. Cornett, his wife;
Norman Jackson and Lucille L. Jackson, his wife,
v.
KEENE CORPORATION, individually and as successor-in-interest
to Keene Building Products and Baldwin, Emret and Hill;
A.C. & S. Co., Inc., a/k/a Acands, Inc., and formerly known
as Armstrong Contracting and Supply Corp.; Amoco Chemicals
Corporation; Asbestos Corporation of America; Atlas
Turner, Ltd., formerly known as Atlas Asbestos Company, a
division of Bell Asbestos Mines, Ltd.; Catalytic, Inc.;
Celotex Corporation, individually and as
successor-in-interest to the Philip Carey Manufacturing
Company, Philip Carey Corporation, Smith and Kanzer, Briggs
Manufacturing and Panacon Corporation; Jim Walter
Corporation; C.F. Braun & Co.; Delaware Insulation
Company; Eagle-Picher Industries, Inc.; Fibreboard
Corporation; GAF Corporation, individually and as
successor-in-interest to Ruberoid Corporation; Garlock,
Inc.; H.K. Porter Company, Inc.; H. Thomas McGuire;
Metropolitan Life Insurance Company; Nicolet, Inc.,
individually and as successor-in-interest to Keasbey &
Mattison Co. and Nicolet Asbestos Mines; Nosroc
Corporation, individually and as successor-in-interest to G.
& W.H. Corson, Inc. and Calcite Quarry Corporation;
Owens-Corning Fiberglas Corporation; Owens-Illinois, Inc.;
OY Partek AB, previously trading as Paraisten Kalkki Oy and
Suomi Mineral Oy; Pittsburgh Corning Corporation; Powhatan
Mining Company; Raymark Industries, Inc., individually and
as successor-in-interest to Raybestos-Manhattan; Spraycraft
Corporation, individually and as successor-in-interest to
Asbestospray Corporation; Standard Oil Company (corporation
of the State of Indiana); Turner and Newall, PLC,
individually and as responsible entity for the actions and
products of its former subsidiaries, J.W. Roberts, Ltd.,
Turner Brothers Asbestos Industrial Products, Ltd., Turner
Asbestos Fibres and also responsible for the actions and
products of its North American subsidiaries, Keasbey and
Mattison, Bell Asbestos Mines, Ltd. (including its
wholly-owned subsidiary Atlas Asbestos Company and Atlas
Turner, Ltd.); U.S. Mineral Products.
Appeal of CELOTEX CORPORATION, Appellant in Nos. 90-3146,
90-3147 and 90-3148.
 Nos. 90-3144 to 90-3148.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 30, 1990.
Decided Nov. 14, 1990.
 
 John C. Phillips, Jr. (argued), Phillips & Snyder, P.A., Wilmington, Del., for appellant, Manville Corp. Asbestos Disease Compensation Fund.
 Paul A. Bradley (argued), McCarter & English, Wilmington, Del., for appellant, The Celotex Corp.
 Before HUTCHINSON, NYGAARD and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 These consolidated appeals in diversity cases present a novel issue of delicacy and importance of which measures a trial court may take to control its docket. In an effort to expedite its docket, the United States District Court for the District of Delaware issued a minute order after a status conference in these asbestos injury cases fixing a date certain for notice to it by the parties of any settlement of a case scheduled for trial. The order provided for the imposition of a $1,000 fine in the event the case settled after the deadline. The court evidently considered this procedure necessary because of the dramatic increase in asbestos injury case filings. In the cases underlying these appeals, the parties settled their cases after the deadline. The trial court summarily imposed fines proportionately upon the defendants in the first group of cases and upon all counsel in the second group of cases. Counsel in the second group, however, were permitted in their discretion to bill their clients for reimbursement if counsel determined the clients caused the delay. The defendants appealed.[1] We remand with instructions to vacate the fines.I
 
 
 2
 In an innovative effort to manage its trial docket, the district court instituted the practice of "stacking" asbestos cases. Under this practice, the district court assigned the asbestos injury cases to a designated time slot. As a scheduled case is disposed of, either by trial or settlement, the district court moves the next case into the allotted slot. To give the parties of the next case in line sufficient notice of their trial date, the district court judge sets a deadline for settlement negotiations of two weeks prior to the trial date. If the litigants settle after the deadline, the district court imposes a fine regardless of fault and without a prior hearing.
 
 
 3
 Here, the court scheduled the first group of cases, the Dougherty/Wells group, for trial on January 2, 1990. The plaintiffs settled with two of the defendants the day trial was to begin. Because the parties reached settlement on the date of trial rather than before the fixed deadline, the district court imposed a $1,000 fine pursuant to Fed.R.Civ.P. 16(f). The fine was levied proportionately on the "settling defendants" only, one of the defendants being appellant Manville Corporation Asbestos Disease Compensation Fund (Manville). The Dougherty/Wells group then proceeded to trial against the remaining defendants, including Celotex/Carey-Canada (Celotex). After several days of trial, the plaintiffs also settled with Celotex. The plaintiffs accepted the same settlement offer first made by Celotex on September 15, 1989, months prior to the settlement deadline. The district court then amended its order reallocating the $1,000 fine proportionately among the defendants Manville, Celotex, and another settling defendant. The district court, without hearing, denied defendants' motion for Relief by Order. Celotex and Manville then appealed.
 
 
 4
 The court scheduled the second group of cases, the Newton Group, for trial beginning February 5, 1990. All parties, however, settled this litigation prior to the start of the trial but not before the court imposed settlement deadline. These plaintiffs also accepted the Celotex settlement offer first made months prior to the settlement deadline.[2] The district court entered an order on February 12, 1990, fining counsel for the plaintiffs and counsel for each of the defendants $250.00 for failure to settle timely. The order also provided for an opportunity for hearing if "any counsel contests the allocated percentage of such fines" at which time the court would determine "from among the parties represented by counsel at that hearing" which party or parties are most responsible for the delay in settlement "and may allocate the unpaid balance of the fine among one or more such counsel participating in the hearing. The parties found to be responsible for the settlement delay may also be ordered ... to pay the reasonable expenses, including attorneys' fees of holding the hearing." Celotex objected. The district court subsequently held a hearing to consider reallocating the percentage of the fine among the defendants, but refused to consider argument about whether the Court had authority to impose a fine pursuant to Rule 16(f) for failure to settle by a date certain.[3] Defendant Celotex appealed.[4]
 
 
 5
 This court consolidated the appeals of Manville and Celotex by order dated April 2, 1990.II
 
 
 6
 The first issue that must be considered is whether the district court has the authority under Fed.R.Civ.P. 16(f) to impose fines upon a party and/or its counsel for failure to settle by a date certain prior to commencement of trial.
 
 
 7
 Rule 16 governs the scheduling and management of pretrial conferences. The purpose of the rule is to provide for judicial control over a case at an early stage in the proceedings. The preparation and presentation of cases is thus streamlined, making the trial process more efficient, less costly, as well as improving and facilitating the opportunities for settlement. Fed.R.Civ.P. 16 Advisory Committee Notes. Accordingly, Rule 16(a) provides that the court may, in its discretion, direct the attorneys for parties to appear before it for pre-trial conferences "for such purposes as ... facilitating the settlement of the case." If a party fails to obey a scheduling or pretrial order, or fails to participate in good faith in a scheduling or pretrial conference, a judge "may make such orders with regard thereto as are just" and require the offending party "to pay reasonable expenses incurred because of noncompliance with this rule ... unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust." Fed.R.Civ.P. 16(f). Thus, Rule 16 authorizes courts to require parties to attend conferences for the purpose of discussing settlement and impose sanctions if they fail to participate in good faith.
 
 
 8
 Rule 16 does not specifically grant authority to the district court to impose sanctions for settling after a certain date. However, imposing sanctions for unjustified failure to comply with the court's schedule for settlement is entirely consistent with the spirit of Rule 16. The purpose of Rule 16 is to maximize the efficiency of the court system by insisting that attorneys and clients cooperate with the court and abandon practices which unreasonably interfere with the expeditious management of cases. The Rule was promulgated as a response "to a widespread feeling that [it] is necessary to encourage pretrial management that meets the needs of modern litigation." Fed.R.Civ.P. 16 Advisory Committee Notes. The Advisory Committee Notes also state that "[s]ince it obviously eases crowded court dockets and results in savings to the litigants and the judicial system, settlement should be facilitated at as early a stage of the litigation as possible."
 
 
 9
 The intent and spirit of Rule 16 is to allow courts to actively manage the timetable of case preparation so as to expedite the speedy disposition of cases. Thus, the imposition of sanctions for failure to comply with a settlement schedule is entirely consistent with the purpose of Rule 16. See Shapiro, Federal Rule 16: A Look at the Theory and Practice of Rulemaking, 137 U.Pa.L.Rev.1969, 1987 (1989) (The purpose of 1983 amendments to Rule 16 was to make parties and their attorneys answerable to the court, and to their adversaries, for actions or inactions thought to be responsible for the heavy costs and delays of litigation in the federal courts.)
 
 
 10
 In the present case, however, the district court imposed fines payable to the Clerk of the Court and which were unrelated to expenses caused by settling after the deadline. The amount of the fine, $1,000, was arbitrarily chosen by the court and not tied to any ascertainable cost to either the court or opposing parties. Indeed, in a different asbestos case scheduled for trial before the court, the court raised the amount of the fine to $2,000. The arbitrariness of the amount of the fines imposed reveals that the fines were not levied for the purpose of reimbursement. Although not described as such by the court, the fines in the present case were, in effect, penalties for contempt of court.
 
 
 11
 These fines, imposed without regard to the expenses incurred by the parties' actions, were coercive in character. Although they have some aspects of criminal contempt because the fines were payable to the Clerk of the Court and were seemingly imposed to vindicate the court's authority, we conclude that they constituted civil contempt.[5] 5] First, they were intended to compel the parties to settle before the deadline fixed by the court. "A conditional penalty ... is civil because it is specifically designed to compel the doing of some act. 'One who is fined, unless by a day certain he [does the act ordered], has it in his power to avoid any penalty.' " Hicks v. Feiock, 485 U.S. 624, 633, 108 S.Ct. 1423, 1430, 99 L.Ed.2d 721 (1988) (quoting in part In Re Nevitt, 117 F. 448, 461 (8th Cir.1902)). Second, the court did not give notice that the parties or counsel would be charged with a criminal offense. The court made no effort to comply with Rule 42 of the Federal Rules of Criminal Procedure. The only purpose of the minute order stating that a "$1,000 fine will be apportioned among all counsel unless particular counsel are determined to have caused the delay ..." was to compel conclusion of any settlement by a date certain fixed by the court.
 
 
 12
 A finding of contempt, even under the auspices of Rule 16, must satisfy due process requirements. Rule 16 "did not loose a strange and capricious new beast." Salahuddin v. Harris, 782 F.2d 1127, 1133 (2nd Cir.1986). Due process requires that a potential contemnor be given notice and a hearing regardless of whether the contempt is civil or criminal in nature. In Re Grand Jury Proceedings, 795 F.2d 226, 234 (1st Cir.1986), cert. denied, Caucus Distributors v. United States, 479 U.S. 1064, 107 S.Ct. 950, 93 L.Ed.2d 999 (1987). These customary procedural safeguards ensure that the parties or their attorneys have an opportunity to explain the conduct deemed deficient before the fine is imposed and that a record will be available to facilitate appellate review. Eash v. Riggins Trucking Inc., 757 F.2d 557, 571 (3rd Cir.1985) (in banc).
 
 
 13
 The district court imposed the sanctions in this case without giving the parties or counsel an opportunity to be heard or providing notice of whether the plaintiffs, the defendants, their counsel, or all of them would be fined. In its amended order of January 10, 1989, pertaining to one group of cases, the court summarily directed without prior notice or hearing that the fine be paid proportionately by the "settling defendants." In the second group of cases, the court in its summary order of February 12, 1990, directed that both plaintiffs' counsel and defendants' counsel pay the fine proportionately. In this instance, however, the court provided for a subsequent hearing to reallocate percentages upon the request of counsel. Obviously, the court, conscious of due process requirements, entered the second order providing for a hearing, but made it available only upon the request of counsel in an effort possibly to relieve itself of the burden of having any hearing.
 
 
 14
 Although the second order is not as clearly deficient as the first, we are constrained to believe that both orders suffer from a lack of due process. In the first order, the district court made no determination as to fault; the fines were nevertheless imposed only on the defendants. In so doing, the district court disregarded the settling defendants' due process rights to notice and to be effectively adjudged before the imposition of any fine. Such disparate treatment of plaintiffs and defendants may not be countenanced. Even if the plaintiffs and defendants had been treated similarly, a hearing would still be necessary to determine which, if any, of the parties were at fault. It may well have been that none of the parties were responsible for the settlement delay; it is also possible that the delay may have been caused by the plaintiffs' procrastination or indecision. Punishing clients or attorneys for what may be blameless behavior is not an acceptable disposition.
 
 
 15
 In the second order, the court imposed the fine proportionately on counsel for all the parties, but again without regard to fault. Although there was an opportunity to obtain a hearing later, we do not believe that it is a sufficient response to due process hearing requirements to inform counsel that they can seek a hearing to be relieved of the fine if they request it. This is an unnecessary burden on counsel and it is quite a different situation to defend against a fine in the first instance, including a possible difference in the burden of proof, than it is to seek relief after a fine has been imposed. We see no legal or pragmatic reason for imposing a fine until a hearing has first been held and culpability determined. We believe that, despite the urgent need to promote efficiency and expedition of the court's calendar, a court must give notice to the parties and an opportunity to be heard before imposing a fine. Such procedures will protect counsel and the parties and still permit the court to manage its calendar and pursue its laudable objective of speedy, efficient, and less costly disposition of cases.
 
 
 16
 The post-deprivation hearing available upon demand in the second group of cases did not satisfy due process requirements for additional reasons. The order permitting counsel to request a hearing presumed that a fine would be imposed; the only question for the hearing was which counsel was most at fault. The court eliminated the possibility that no one was at fault and thus, at least for the parties fined, made the punishment unconditional. Moreover, any counsel requesting a hearing to be relieved of the fine were faced with the possibility of having to pay the reasonable expenses, including attorneys' fees, of holding the hearing if they were found to be responsible for the settlement delay. In other words, if counsel wished to exercise their due process rights of having a hearing, they were required to risk the imposition of additional sanctions. A hearing, whether it be pre- or post-deprivation, requiring counsel to gamble whether the request to be heard could result in an outcome worse than the status quo, does not satisfy due process requirements.
 
 
 17
 The fines imposed in these cases present additional concerns aside from the court's failure to satisfy due process requirements. The plaintiffs in these consolidated cases received offers from defendant Celotex that were outstanding for months prior to the settlement deadline. The district court seemed to believe that the imposition of a fine upon the defendants, since they controlled the purse essential to a settlement, would be an effective measure to compel a relaxation of the purse strings and induce settlement. This is illustrated by the court's statement that "Celotex's position of making an offer and sitting firm on it perhaps is not the way to get them to settle." The end purpose, however, does not justify the means. By imposing fines on only the defendants, the district court attempted to persuade Celotex to change its tactics because it believed that this would promote earlier and more frequent settlements. Although the facilitation of settlements is a laudable goal, "pressure tactics to coerce settlement simply are not permissible." Kothe v. Smith, 771 F.2d 667, 669 (2nd Cir.1985). "[T]he court should never work to coerce or compel a litigant to make a settlement." Del Rio v. Northern Blower Co., 574 F.2d 23, 26 (1st Cir.1978) (quoting Cropp v. Woleslagel, 207 Kan. 627, 633, 485 P.2d 1271, 1276 (1971)). When the district court fined only the settling defendants, regardless of fault, it created impermissible pressure on the defendants to alter their course in settling cases.
 
 
 18
 We also express our concern over the district court's imposition of sanctions on those parties settling after the first few days of trial. Settling a case after a trial is only partially completed does not, by itself, demonstrate that an attorney or his client has been irresponsible in the use of judicial resources. In fact, it is likely that the courts have served their purpose of providing a forum for resolving disputes in that instance. When parties come to a settlement after they have begun trial, it is likely that the process aided them in coming to a resolution.As every experienced trial lawyer knows, the personalities of the parties and their witnesses play an important part in litigation. It is one thing to have a valid claim; it is quite another to convince a jury of this fact. It is not at all unusual, therefore, for a defendant to change his perception of a case based on the plaintiff's performance on the witness stand.
 
 
 19
 Kothe v. Smith, 771 F.2d at 670. We agree with the Kothe court that an attorney or client should not be condemned for changing his evaluation of a case after listening to testimony during trial.
 
 
 20
 Our decision is not intended to discourage the settlement of cases in appropriate circumstances and in an appropriate manner. In this age of burgeoning complex litigation and limited judicial resources, settlements are to be encouraged. Parties who contemplate or participate in settlement negotiations should, in their own interest and in the common interest of the efficient management of court calendars, extend themselves as much as they reasonably can in consummating settlements to accommodate court schedules. However, the court's efforts to expedite the settlement of cases must be consistent with the dictates of due process. Furthermore, these efforts should not unduly pressure or coerce litigants into settlement.
 
 III
 
 21
 We hold that a court may not find a party or counsel in civil contempt for settling a case after a deadline fixed by the court without affording them their due process rights of adequate notice and a prior hearing. Accordingly, the cases will be remanded to the district court with instructions to vacate the fines except that the mandate with respect to Celotex Corporation and Carey Canada, Inc.,[6] now in bankruptcy, will be stayed for thirty days to give them an opportunity to seek relief from the stay order if they so desire. No costs will be taxed.
 
 
 
 [1]
 The plaintiffs, having settled their cases, had no interest in these appeals from the imposition of fines. Regrettably, this court did not have the benefit of appellees' briefs and the "concrete adverseness which sharpens the presentation of issues." Hess v. New Jersey Transit Rail Operations, 846 F.2d 114, 115 (2d Cir.1988) (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962))
 
 
 [2]
 One plaintiff received an increase of $500.00. However, his decision to settle was not contingent on the additional money because the plaintiff had agreed to accept the Celotex matrix, a set schedule of recovery. The increase resulted from discovery of additional facts
 
 
 [3]
 The court rescinded the fine imposed on counsel for Fibreboard because plaintiffs had voluntarily dismissed Fibreboard as a defendant without any settlement. It sustained the fines imposed on Celotex
 
 
 [4]
 This court has appellate jurisdiction pursuant to 28 U.S.C. 1291 as interpreted in Cohn v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The appeals were filed after the litigation was resolved by all parties by settlement with the exception of the fine issues. The order satisfied the appealability test under Cohn and Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535 (3d Cir.1985)
 
 
 [5]
 We disagree with the court in Hess v. New Jersey Transit Rail Operations, 846 F.2d 114, 115 (2d Cir.1988), which found that the imposition of a fine for failing to obey court's order to make a bona fide settlement offer to be a criminal contempt. However, regardless of whether the contempt was criminal or civil, due process was still violated in the present case because any finding of contempt requires notice and a hearing. In Re Grand Jury Proceedings, 795 F.2d 226, 234 (1st Cir.1986), cert. denied, Caucus Distributors v. United States, 479 U.S. 1064, 107 S.Ct. 950, 93 L.Ed.2d 999 (1987)
 
 
 [6]
 This court was recently informed that the United States Bankruptcy Court for the Middle District of Florida granted the motion of the Celotex Corporation and Carey Canada, Inc., who had filed for Chapter 11 Reorganization on October 12, 1990, for an automatic stay pursuant to sections 105 and 362 of the Bankruptcy Code