NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 15-3014 and 16-2780
_____

MARKS LAW OFFICES, LLC d/b/a MARKS & SOKOLOV, LLC

v.

SHAHROKH MIRESKANDARI; PAUL BAXENDALE-WALKER,

Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.:  2-13-cv-03152)
District Judge:  Honorable Jeffrey L. Schmehl

Submitted Under Third Circuit L.A.R. 34.1(a)
July 13, 2017

Before: GREENAWAY, JR., SHWARTZ, and RENDELL, Circuit Judges

(Opinion filed: August 18, 2017)

_____

O P I N I O N*

_____

**RENDELL**, <u>Circuit Judge</u>:

This appeal arises from a suit to collect unpaid attorney's fees, but focuses on the District Court's Orders taking the Defendants to task for obfuscation that resembles what we would colloquially call, "cat and mouse tactics." We will affirm.

I.

Shahrokh Mireskandari and Paul Baxendale-Walker (the "Defendants") engaged Bruce Marks, a Pennsylvania attorney, to represent them in a civil RICO action in California (the "Mayne Matter"). When the Defendants failed to pay Marks' fees, Marks brought this diversity suit under the registered trade name of his law firm, Marks & Sokolov, LLC, alleging breach of contract and quantum merit. We briefly trace relevant portions of the years-long procedural history that followed.

To begin, the Defendants failed to timely answer Marks' Complaint, although they did attach a copy of the Complaint to a *pro se* petition for arbitration that they filed with the Los Angeles County Bar Association (the "California Arbitration") before their response was due in this matter. The initiation of the California Arbitration had the effect of staying this action. But shortly before an appearance was due in the California Arbitration, the Defendants abruptly withdrew their Petition, and instead filed a civil action in the Los Angeles County Superior Court against Marks claiming legal

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

malpractice (the "Malpractice Action"). The Defendants' counsel in these matters (the "California Counsel") wrote to Marks acknowledging this suit but asserted that neither of the "[Defendants] have yet been effectively served." A277. They also demanded Marks dismiss his case. He declined, and after numerous subsequent attempts to serve the Defendants failed to secure their appearance, the District Court deemed service complete and entered default judgment in the amount of $229,693.25.

Shortly thereafter, the Defendants moved to set aside the default judgment under Federal Rule of Civil Procedure 60(b)(1) and 60(b)(4). The District Court rejected both grounds and denied the motion (the "Rule 60(b) Order"). The Defendants immediately appealed.

While that appeal was pending, the District Court found Baxendale-Walker in contempt of court for his refusal to comply with the District Court's orders granting discovery in aid of execution ("Contempt Order I"). Instead of complying, Baxendale-Walker filed a motion for reconsideration, which the District Court also denied ("Contempt Order II").

Finally, during the pendency of this post-judgment discovery, we summarily remanded the Defendants' earlier appeal of the Rule 60(b) Order for the District Court to determine whether it had subject matter jurisdiction. The District Court examined the named plaintiff, allowed the substitution of the named plaintiff with the real party in interest pursuant to Federal Rule of Civil Procedure 17(a)(3), and concluded that it had jurisdiction under 28 U.S.C. § 1332(a)(2) (the "Jurisdiction Order"). The Defendants appeal this order too.

3

In sum, the Defendants challenge four Orders: the Jurisdiction Order, the Rule 60(b) Order, and both Contempt Orders. Perceiving no error, we will affirm.

## II.[1]

### A. Jurisdiction Order[2]

Although the Defendants challenge jurisdiction, the focus of their arguments is on the District Court's Rule 17 holding. Before reaching the jurisdictional question, the District Court concluded that Marks & Sokolov, LLC, the captioned plaintiff, was actually a trade name registered to Marks Law Offices, LLC, a Pennsylvania limited liability company of which Marks was the sole member.[3] Concluding that the real party in interest was therefore Marks Law Offices, LLC d/b/a Marks & Sokolov, LLC, the District Court permitted Marks to substitute that entity in place of Marks & Sokolov, LLC per Rule 17(a)(3). On appeal, the Defendants argue that the substitution of Marks Law Offices, LLC was error because the real party in interest is actually "Marks & Sokolov – Attorneys at Law," an international partnership wherein Sokolov, a Russian

---

[1] We have jurisdiction under 28 U.S.C. § 1292(a).

[2] In our jurisdictional analysis, we exercise *de novo* review over questions of law, but review factual findings underlying a determination of jurisdiction for "clear error." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). We review a District Court's holding with respect to Rule 17 for abuse of discretion. *See ICON Grp., Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 476 n.3 (3d Cir. 1987).

[3] The District Court noted that "it is unclear from the registration form . . . just what entity has an interest in the fictional name Marks & Sokolov, LLC," *Marks & Sokolov, LLC v. Mireskandari*, No. 2:13-CV-03152, 2016 WL 2771785, at *5 (E.D. Pa. May 11, 2016), because the form, in addition to listing "Marks Law Office, LLC" also listed "Bruce S. Marks, LLC" as a party interested in the fictitious name, A2229–30. The entity Bruce S. Marks, LLC does not exist. Marks averred that his office manager had incorrectly filled out the form and that this box should have been left blank. He also averred in March 2016 (during the pendency of this suit) that he filed an amendment correcting the mistake.

resident, is a general partner. Defs' Br. 31–32. Sokolov's presence, they contend, destroys diversity jurisdiction, so the suit should be dismissed. We disagree.

Rule 17(a) indeed requires that the "action . . . be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). But the District Court found, after permitting discovery and holding a hearing on the jurisdictional issue, that Marks Law Offices, LLC d/b/a Marks & Sokolov LLC was the real party in interest based on what it characterized as the "unrefuted" averments and documentary evidence presented by Marks. *Marks & Sokolov, LLC v. Mireskandari*, No. 2:13-CV-03152, 2016 WL 2771785, at *5 (E.D. Pa. May 11, 2016). These findings included that Marks formed Marks Law Offices, LLC in 2001; Marks registered Marks & Sokolov, LLC under the Pennsylvania Fictitious Names Act, 54 Pa. C.S. §§ 301 et seq., as belonging to Marks Law Offices, LLC in 2001; since that time, Marks Law Offices, LLC has practiced under the fictitious name Marks & Sokolov, LLC; Marks is, and always has been, the sole member of Marks Law Offices, LLC; Sokolov, although he works with Marks, "is neither a member, partner nor joint venturer with Marks Law Offices, LLC," *Marks & Sokolov, LLC*, 2016 WL 2771785, at *5; and finally, that the Defendants signed an engagement letter with Marks who signed on behalf of Marks & Sokolov, LLC. The Defendants do not meaningfully contest these findings or offer contrary evidence to support their claim. We have trouble understanding their myopic focus on Sokolov, moreover, because they do not claim to have ever engaged Sokolov or even to have met him. He was never in the picture.

5

Instead, the Defendants attempt to avoid the consequences of these factual findings by arguing that substitution was not proper at this stage in the litigation. We are not persuaded. Rule 17(a)(3) provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). The purpose of this rule is "to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 562 (3d Cir. 2008) (quoting 6A Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice & Procedure, § 1555 (2d ed. 2008)).

Here, the District Court explicitly found that Marks' failure to name Marks Law Offices, LLC as the plaintiff was "not the result of any bad faith," but rather "looseness and sloppiness for which [Marks] should not have to forfeit [his] lawsuit." *Marks & Sokolov, LLC*, 2016 WL 2771785, at *8. Accordingly, the District Court determined that "in the interests of justice" the matter should not be dismissed under Rule 17(a)(3). *Id.* We see no reason to disturb this equitable ruling. Marks' corporate filings may have been careless (and, as the Defendants point out, may have even run contrary to his ethical obligations to avoid the use of misleading firm names), but the Defendants offer nothing to suggest Marks' failure to file in the name of Marks Law Offices, LLC was the result of his deliberately acting in bad faith. Further, the Defendants are in no position to protest the timeliness of the substitution given that they failed to raise a Rule 17 objection during the first three years of this litigation. For similar reasons, their argument, raised for the

6

first time in this appeal, that they "never knew of . . . and never engaged" the entity of Marks Law Offices, LLC d/b/a Marks & Sokolov, LLC is not credible.[4] Defs' Br. 30. We have reviewed the Defendants' other legal arguments, but find them unavailing. The District Court did not abuse its discretion in permitting the substitution.[5]

Accordingly, because Marks, the sole member of Marks Law Offices LLC, is a Pennsylvania resident, Mireskandari is a California resident, Baxendale-Walker is an English resident (and thus an alien), and the amount in controversy exceeds $75,000, the District Court correctly determined that jurisdiction lies under 28 U.S.C. § 1332(a)(2).

B. Rule 60(b) Order[6]

The Defendants next challenge the denial of their motion to vacate the default judgment under Rule 60(b). They advance the same arguments rejected by the District Court.

First, they argue that the default judgment is "void" under Federal Rule of Civil Procedure 60(b)(4) because service of process was deficient under Rule 4.

---

[4] There was also uncontested record evidence that the Defendants electronically wired their retainer to Marks Law Offices, LLC.

[5] We will therefore grant Marks' pending motion on appeal to amend the caption to reflect that "Marks Law Offices LLC d/b/a/ Marks & Sokolov, LLC" is the real party in interest.

[6] Where a party claims that an entry of default judgment is void pursuant to Rule 60(b)(4) because the complaint was never properly served, our review is plenary. *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 n.5 (3d Cir. 2008); *see generally Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005) ("[O]n a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant[s] bear[] the burden of proof to establish that the purported service did not occur."). We assume, *arguendo*, that the Defendants' arguments are not waived, even though Marks asserts they are.

In rejecting this argument, we begin by noting the lengths to which Marks went to secure the Defendants' appearance in this matter. Marks originally attempted to serve Baxendale-Walker by having the clerk serve the summons and complaint via registered mail to his last known London address under Rule 4(f)(2)(C)(ii). He also attempted to serve Mireskandari by registered mail at his last known Beverly Hills address per Rule 4(e)(1) and Pennsylvania Rule of Civil Procedure 403 and 404. Both Defendants averred under oath in the Mayne Matter that they had received, and continued to receive, mail at this very same Beverly Hills address around this time. Further, well before the time to respond in this matter expired, Marks sought waivers of service through the Defendants' California Counsel, who acknowledged the suit and demanded all future communications flow through them. When the Defendants listed a second Beverly Hills address in an unrelated matter, Marks sought an Alias Summons for that address and attempted personal service there, but the receptionist stated she did not know the Defendants and did not receive mail for them. The District Court then ordered "alternative" service by again requiring regular mail service to the Defendants' California addresses and Baxendale-Walker's London address, as well as to the Defendants' emails and by certified mail upon their California Counsel (the "Alternative Service Order"). The Defendants, for the most part, do not challenge their last known addresses, ownership or control over their emails, or that they were represented by the California Counsel.

Instead, the Defendants challenge the propriety of the Alternative Service Order. Mireskandari makes two arguments. First, he maintains, despite his declarations under oath in the Mayne Matter, that the person who accepted service at the Beverly Hills

8

address was not his agent. The District Court rejected this factual argument, and we see no reason to disturb its judgment.[7] Second, he argues that the Alternative Service Order violated Pennsylvania Rule of Civil Procedure 430, which provides that a court may enter "a special order directing the method of service" in the event service cannot be completed under other applicable rules, but only if the plaintiff submits an affidavit stating his good faith efforts to locate the defendants and effect service. Pa. R. Civ. P. 430(a); *see also Deer Park Lumber, Inc. v. Major*, 559 A.2d 941, 944 (Pa. Super. Ct. 1989) ("The purpose of this procedure is to provide proof that a good faith effort has been made to effect service under normal methods."). Marks' submissions to the District Court, however, demonstrate his good faith efforts to locate and serve the Defendants by traditional means, as we detail above. The Alternative Service Order was consistent with Pennsylvania law and therefore Rule 4(e)(1).

Baxendale-Walker, for his part, asserts that Marks' service to him was prohibited by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, art 10(a), 20 U.S.T. 361, as well as Rule 4(f)(3). His argument fails. "Article 10(a) encompasses service by mail," and permits such service to a person residing in a foreign state provided that (1) "the receiving state has not objected to service by mail" and (2) it is authorized by "otherwise-applicable law." *Water Splash,*

---

[7] Curiously, Mireskandari produced mailbox keys purportedly able to open the mailbox at the Beverly Hills address, but when Mireskandari and his attorney appeared at the location, they were unable to open the mailbox or even the front door. We cannot be certain why the Defendants listed these addresses in the Mayne Matter, but it seems clear they were "not being truthful," if not to the Mayne court, then to the District Court here. *Marks & Sokolov, LLC v. Mireskandari*, No. 13-3152, 2015 WL 1133788, at *5 n.1 (E.D. Pa. Mar. 11, 2015), *remanded by*, No. 15-1689 (3d Cir. 2015).

*Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017). While Baxendale-Walker points out that England, the receiving state, might object to email service, he offers no indication that service by regular mail (or upon one's attorney for that matter) would be similarly objectionable. Moreover, Marks' service to him was permissible under Rule 4(f)(3). *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (noting under Rule 4(f)(3) that courts permit "a wide variety of alternative methods of service including . . . mail to the defendant's last known address [and] delivery to the defendant's attorney").

Finally, we are satisfied that the myriad modes of service authorized by the District Court and completed by Marks provided "notice reasonably calculated . . . to apprise interested parties of the pendency of the action," and thus satisfied the requirements of the Due Process Clause. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). It is beyond cavil that the Defendants had actual notice of this suit well before the deadline to respond expired as they used the Complaint in this matter offensively in the California Arbitration. Further, the record shows that the Defendants were in contact with their California Counsel about this matter. The District Court did not abuse its discretion in denying Rule 60(b)(4) relief on the above grounds.

The Defendants next argue that they demonstrated excusable neglect under Rule 60(b)(1). *See Nara v. Frank*, 488 F.3d 187, 193–94 (3d Cir. 2007) (noting courts should consider, inter alia, the reason for the delay including whether it was within the movant's control and whether the movant acted in good faith); *see also In re Cendant Corp.*

10

*PRIDES Litig.*, 234 F.3d 166, 171 (3d Cir. 2000) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

The District Court reviewed the relevant factors and reasoned that the Defendants, who failed to attach a proposed answer to their motion to vacate, had no meritorious defenses, "took no action to defend this case until nearly one year after the complaint had been filed," and that the delay was "solely the fault of the [D]efendants' culpable conduct and . . . bad faith." *Marks & Sokolov, LLC v. Mireskandari*, No. 13-3152, 2015 WL 1133788, at *8 n.1 (E.D. Pa. Mar. 11, 2015), *remanded by*, No. 15-1689 (3d Cir. 2015). We agree with this assessment. The Defendants had actual notice of the suit in plenty of time to file an answer, and their reason for delay—a conclusory assertion that they had trouble finding a lawyer—falls woefully short of showing that their failure to appear was beyond their control. *Nara*, 488 F.3d at 193; *see also Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 274 (3d Cir. 2002) (declining to provide Rule 60(b) relief where movant was "trying to escape the consequences of [its] counseled and knowledgeable decisions" (internal quotation marks omitted)).

The Defendants' dilatory tactics in this case appear to be part of "a carefully orchestrated plan . . . to delay this action" in favor of the parallel California Arbitration proceeding and Malpractice Action in which the Defendants had hoped to secure a favorable verdict to the exclusion of this matter.[8] *Marks & Sokolov, LLC*, 2015 WL

---

[8] The record was rife with other examples of the Defendants attempts' at delaying this action further. Even on appeal, the Defendants asked for numerous extensions to file their briefs.

11

1133788, at *8. Unfortunately for them, this strategy did not pay off. The District Court did not abuse its discretion in denying Rule 60(b)(1) relief on these facts.

C. Contempt Orders I and II[9]

Finally, Baxendale-Walker challenges the District Court's orders holding him in contempt. Baxendale-Walker refused to comply with the District Court's discovery orders, claiming he was physically incapable of responding due to various medical conditions including dementia. In support, he proffered a "house call" doctor's note, A1482–83, a so-called "psychodiagnostic" evaluation, A1670, and a neurologist's report addressed to the house call doctor, which was based largely on the psychodiagnostic evaluation, A1607–10. The District Court concluded following oral argument that these submissions did not satisfy the reliability requirements of Federal Rule of Evidence 702 because none of the documents provided an onset date nor were sworn. Sensing hypocrisy, moreover, the District Court noted that Baxendale-Walker seemingly had no trouble assisting his attorneys in his numerous other matters wherein he was proceeding as a plaintiff. It thus rejected his defense.

On appeal, Baxendale-Walker protests only that the District Court's denial of a full evidentiary hearing deprived him of due process. While civil contempt hearings must afford due process, *see Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1127 (3d Cir. 1990), due process does not necessarily require a full evidentiary hearing. Due process is satisfied under our case law when a potential contemnor is given "notice" and a hearing

---

[9] We review an order of contempt for an abuse of discretion. *Harris v. City of Philadelphia*, 47 F.3d 1311, 1321 (3d Cir. 1995).

that provides "an opportunity to explain the conduct deemed deficient before the fine is imposed [so] that a record will be available to facilitate appellate review." *Id.* There is no dispute here that the District Court permitted motion practice, allowed the submission of evidence, and held oral argument, during which time Baxendale-Walker's counsel was given ample "opportunity to explain [his client's] conduct." *Id.*

In any event, Baxendale-Walker does not contest the central holding of the District Court: that his evidence was not competent under Rule 702. He has not proffered any other evidence to support his defense of physical impossibility. This leaves only his "mere assertion of inability," which does not suffice to support a defense to contempt under our case law. *Harris v. City of Philadelphia*, 47 F.3d 1311, 1324 (3d Cir. 1995) (internal quotation marks omitted). So, the District Court did not abuse its discretion in finding Baxendale-Walker in contempt or in denying reconsideration of its earlier holding. For the foregoing reasons, we will affirm.