**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1506
_____

In re AMERICA'S INSURANCE CENTER, INC.,
Debtor

NAGEL RICE LLC,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:19-cv-13376)
District Judge: Honorable Brian R. Martinotti

_____

Argued: March 2, 2021

Before: RESTREPO, BIBAS, and PORTER, *Circuit Judges*

(Filed: August 12, 2021)

Bruce H. Nagel                    [ARGUED]
Bradley L. Rice
Nagel Rice
103 Eisenhower Parkway
Roseland, New Jersey 07068

   *Counsel for Appellant*

Richard D. Trenk                  [ARGUED]
Trenk Isabel
290 West Mountain Pleasant Avenue
Suite 2350
Livingston, NJ 07039

   *Counsel for Appellees Marc Levy &*
   *MBL Benefits Consulting Corp.*

Jonathan I. Rabinowitz        [ARGUED]
Rabinowitz Lubetkin & Tully
293 Eisenhower Parkway
Suite 100
Livingston, NJ 07039

   *Counsel for Appellee John W. Sywilok*

_____

**OPINION**[*]

_____

BIBAS, *Circuit Judge*.

Though bankruptcy settlements cannot please everyone, they must always be fair. A bankruptcy court approved a settlement that left a creditor with at most $50,000—and possibly $0—on its $160,000 claim. But the court based its approval on a factual premise that is not supported by the record. Because we cannot be sure that the deal was fair, we will vacate and remand.

## I. BACKGROUND

America's Insurance Center, an insurance agency, was deeply in debt. It owed $530,000 to its minority owner Mark Levy and his company MBL. It also owed another $230,000 to two law firms: $70,000 to Olender Feldman and $160,000 to Nagel Rice.

To pay these debts, America's Insurance relied on its book of business. But by 2012, it could no longer service its accounts. So it sold them to a broker, who agreed to pay back 40–45% of what he earned from them. It also promised all future commissions to Levy

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

(who was president of America's Insurance) to pay off its debts to him. The executive who represented America's Insurance in this deal also worked for Levy at MBL.

Though America's Insurance had given its last assets to Levy, it still owed Olender Feldman, MBL, and Nagel Rice. So it went bankrupt. The bankruptcy court appointed a trustee. The only way the trustee could pay these debts was to claw back the commissions from Levy. To do so, the trustee would need to sue Levy for fraudulent conveyance. He thought he had "a good faith basis" to do that. App. 1683–84. After all, Levy was an insider, and there was a strong case that Levy had wrongfully grabbed America's Insurance's dwindling assets for himself.

But instead of suing Levy, the trustee struck a settlement: Levy would return $120,000 in commissions and keep about $300,000 earned so far, plus all future commissions. And both Levy and MBL would give up their claims against America's Insurance. Of the $120,000 that Levy returned, Olender Feldman would take $22,500.

That left $97,500 to satisfy both the trustee's administrative costs and Nagel Rice's claim. Under the Bankruptcy Code, trustees are paid first. 11 U.S.C. § 507(a)(2). Though the trustee had spent much more than $97,500, he agreed to cap his costs at $47,500, leaving $50,000 for Nagel Rice. But there was a catch: if anyone appealed the settlement after the bankruptcy court approved it, the trustee would refuse to cap his fee—so Nagel Rice would get nothing.

Nagel Rice was excluded from the negotiations, disliked the settlement, and objected. But the bankruptcy court was unmoved. If the trustee had sued Levy for fraud, it reasoned, he would have grossed at most $500,000. "[A]t that number," and after subtracting

litigation costs and other creditors' claims, the court "d[id]n't see Nagel Rice doing much better than [$50,000]." JA 1911. So it found the deal fair and approved it.

On appeal, the District Court agreed that $50,000 was fair. But since Nagel Rice had appealed, it now stood to get nothing. Nagel Rice objected to that term as a poison pill that penalized its right to appeal. The District Court disagreed and affirmed. Now Nagel Rice appeals to us, challenging both the original $50,000 and the $0 it stands to get if we affirm.

## II. THE BANKRUPTCY COURT ERRED IN APPROVING THE SETTLEMENT

A bankruptcy court may not approve a settlement unless it is "fair and equitable." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). We review its factual findings for clear error and its approval of the settlement for abuse of discretion. *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992); *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

The court's approach was reasonable. It compared the $50,000 that Nagel Rice would get from the settlement with how much it could have gotten if the trustee had sued Levy. If the court were right that Nagel Rice would have done no better than $50,000, then the settlement would have been fair (at least without the appeal condition).

But the court erred in its calculation. It found that the trustee's suit would have grossed no more than $500,000. We see no support in the record for that number. If the trustee had sued Levy and won, he could have recovered all the commissions that Levy had taken plus future ones. By the time of the settlement in 2019, Levy had earned at least $410,000, and commissions had been worth roughly $80,000 per year. So if the commissions had continued for even a couple more years, the trustee might have recovered well over $500,000.

4

The court, however, thought that the commissions would dry up soon after a lawsuit. It believed that America's Insurance needed *Levy's* help to service its old insurance customers. If Levy lost his right to commissions, the court reasoned, he would stop helping and the income would evaporate.

There is no evidence of that. Indeed, the trustee conceded at oral argument that "there isn't a specific fact which supports a conclusion that … [if] Levy's services terminate th[en] the income stream terminates." Oral Arg. Tr. 35. True, America's Insurance needed *someone* with a broker's license to accept the commissions. But there was no evidence that it had to be Levy.

The court thus erred in finding that a fraud suit would gross at most $500,000. Yet that number was the key to finding the deal fair. So the court was wrong to approve the deal based on this reasoning.

### III. ON REMAND, THE BANKRUPTCY COURT SHOULD TAKE A CLOSER LOOK AT ANY APPEAL CONDITION

Because we must vacate the settlement, we need not rule on the condition that the trustee would refuse to cap his fee if anyone appealed, leaving Nagel Rice with nothing. But if the trustee proposes a new settlement with a similar condition, the court should study it more closely.

The condition meant that if Nagel Rice lost on appeal, it would forfeit $50,000. Normally, courts may not punish parties for appealing. They may not, for instance, resentence a criminal defendant more harshly just because he appealed his first sentence. *North Carolina v. Pearce*, 395 U.S. 711, 723–25 (1969). Nor may they threaten to revive a

counterclaim if the plaintiff appeals. *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974); *cf. Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1128 (3d Cir. 1990) (forbidding the use of pressure to force a settlement). Yet litigants may end up worse after an appeal for separate, valid reasons. For instance, after a criminal defendant successfully appeals and he is convicted again, the court may give him a higher sentence based on newly discovered evidence. *Pearce*, 395 U.S. at 726.

Here, there may have been a valid reason to give Nagel Rice less if it appealed. The appeal added administrative costs. And in bankruptcy, the debtors must share those costs. So making Nagel Rice cover part of the costs of appeal may have been reasonable.

But we are not sure that the specific condition here fit that goal. The court made no findings about the reasonable costs of appeal, much less Nagel Rice's fair share of it. If the court considers a similar condition on remand, it should look at those issues more closely.

\* \* \* \* \*

Because the court's approval of the settlement rested on an unsupported factual premise, we will vacate and remand.

6

PORTER, *Circuit Judge*, dissenting.

We review a court's approval of a bankruptcy settlement for abuse of discretion. *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006). Absent "a definite and firm conviction" that it made a mistake, we will not disturb the court's decision. *Id.* (internal quotation marks omitted) (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001)). The Majority holds that the bankruptcy court erred by basing its approval of the settlement on an unsupported factual premise. According to the Majority, the record does not support the bankruptcy court's $500,000 valuation of Nagel Rice's lawsuit. I respectfully disagree.

The bankruptcy court's valuation of the lawsuit is supported by the record. The court credited the trustee's testimony that the litigation would be complex, expensive, and time-consuming. The trustee thought the $500,000 figure was too high, and Nagel Rice thought it was too low. The court considered the arguments on both sides and chose $500,000 as the middle ground. The parties sharply dispute the lawsuit's value, but "the court is not supposed to have a 'mini-trial' on the merits." *See In re Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005) (cleaned up), *aff'd*, No. 03-10323, 2006 WL 2842462 (D. Del. Oct. 2, 2006). I am satisfied that the bankruptcy court weighed the appropriate factors and reached a reasonable conclusion about the future value of a hypothetical lawsuit. *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). Because I find no abuse of discretion, I would affirm the judgment of the District Court.

1